UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| INCHCAPE SHIPPING SERVICES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACT. NO. 1:19-cv-434-TFM-B |
| | : | |
| M/Y BRAMBLE, its engines, | : | FRCP 9(h) |
| tackle and appurtenances, *In Rem*, and | : | In Admiralty |
| BRAMBLE HISTORICAL | : | |
| EPIC COMPANIES, LLC, | : | |
| *In Personam,* | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Intervenor Plaintiff Alabama Shipyard, LLC's, *Motion for Payment of In Custodia Legis Expenses*. Doc. 57, filed December 9, 2019. Alabama Shipyard, LLC, requests the Court order the Clerk of Court to pay Alabama Shipyard, LLC, from the sale proceeds of the M/Y BRAMBLE for Alabama Shipyard, LLC's, provision of docking facilities and fuel storage for the M/Y BRAMBLE while it was under arrest. *Id.* Also pending before the Court is Plaintiff Inchcape Shipping Services, Inc.'s, *Motion for (1) Payment of Custodia Legis Expenses and (2) Order Determining Further Allocation of Same*. Doc. 61, filed December 10, 2019. Inchcape Shipping Services, Inc., requests the Court order the Clerk of Court to pay Inchcape Shipping Services, Inc., and Global Maritime Security from the sale proceeds of the M/Y BRAMBLE for *custodia legis* expenses that Global Maritime Security accrued as a Court-appointed substitute custodian and tax the balance of expenses to the intervenor plaintiffs on a pro-rata basis. *Id.* Having considered the motions, opposition to the motions, and relevant law, the Court finds the Motion for Payment of *In Custodia Legis* Expenses is due to be **DENIED** and the

Motion for (1) Payment of *Custodia Legis* Expenses and (2) Order Determining Further Allocation of Same is due to be **DENIED**.

## I. THE PARTIES

Hereinafter, the Court will refer to Plaintiff Inchcape Shipping Services, Inc., as "Inchcape;" Intervenor Plaintiff JP's Marine Services, LLC, as "JPMS;" Substitute Custodian Global Maritime Security as "Global Maritime;" Intervenor Plaintiff Alabama Shipyard, LLC, as "Alabama Shipyard;" *in rem* Defendant M/Y BRAMBLE as the "Vessel;" Defendant Bramble Historic Epic Companies, LLC, as "Bramble Historic;" and Defendant Orinoco Natural Resources, LLC, as "Orinoco."

## II. PROCEDURAL BACKGROUND

On August 2, 2019, Inchcape filed its Verified Complaint in which it brought its maritime lien claim against the Vessel *in rem*, and the Vessel's owner, Bramble Historic, *in personam*, pursuant to 28 U.S.C. § 1333, Fed. R. Civ. P. 9(h), and the Federal Maritime Lien Act, 46 U.S.C. §§ 31301-31343, for necessaries and services that were provided to the Vessel. Doc. 1. On the same day, Inchcape requested the Court issue a Warrant of Arrest for the Vessel and substitute Global Maritime as custodian of the Vessel in lieu of the United States Marshal. Docs. 2-3. The Court granted Inchcape's requests. Docs. 4, 6.

On August 27, 2019, pursuant to Rule C(4), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Action ("Supplemental Rules for Admiralty or Maritime Claims"), and S.D. Ala. CivLR 102(b), Inchcape requested the Court approve its "Notice of Action In Rem and Arrest of Vessel" and authorize Inchcape to publish said notice. Doc. 12. The Court granted Inchcape's request, approved Inchcape's notice, and ordered Inchcape to publish the notice in accordance with S.D. Ala. CivLR 102(b). Doc. 13.

On September 16, 2019, Inchcape filed its motion to amend its complaint, which the Court granted, to add Orinoco as a defendant upon information that Orinoco may have been an owner of the Vessel. Docs. 16-17. Inchcape filed its amended complaint on September 17, 2019. Doc. 18.

On September 23, 2019, Inchcape filed its proof of publication of the notice. Doc. 21. On September 26, 2019, JPMS timely filed its Verified Complaint in Intervention to assert its maritime lien claims. Doc. 22.

On October 8, 2019, Inchcape filed its Motion for Interlocutory Sale of Vessel in which it requested, pursuant to Rule E(9), Supplemental Rules for Admiralty or Maritime Claims, the Court condemn and sell the Vessel at a public sale, the proceeds of said sale be held in the Registry of the Court pending final judgment in this matter, and to issue notice of the sale in accordance with S.D. Ala. CivLR 104(m)(1). Doc. 26. JPMS joined in Inchcape's motion. Doc. 27. On October 15, 2019, the Court granted Inchcape's motion, set the Vessel's public sale date on November 6, 2019, and ordered notice of the sale be appropriately published. Doc. 30. Upon unopposed motion by Inchcape, the Court authorized the use of National Liquidators as a broker to promote the sale of the Vessel and its fees for such services would be considered a *custodia legis* cost. Docs. 35, 40.

On October 24, 2019, Alabama Shipyard filed its Verified Complaint in Intervention to assert its maritime lien claims. Doc. 34.

On November 5, 2019, Inchcape filed its Joint Motion to Reschedule Marshal's Sale in which it requested the Court reschedule the public sale of the Vessel to allow the broker additional time to stoke interest in the Vessel. Doc. 41. The Court granted Inchcape's motion, rescheduled the public sale to December 4, 2019, and ordered notice of the sale be appropriately published. Doc. 42.

On December 4, 2019, the Vessel was sold at public auction to Modern American Recycling Services, Inc., for $80,000.00, which amount was deposited with the Court. Doc. 56. On December 12, 2019, the Court confirmed the sale of the Vessel and transferred the Vessel's title to Modern American Recycling Services, Inc. Doc. 69.

On December 6, 2019, Global Maritime filed its Motion for Payment of *In Custodia Legis* Expenses and to be Released as the Substitute Custodian. Doc. 55. On December 9, 2019, Alabama Shipyard filed its Motion for Payment of *In Custodia Legis* Expenses. Doc. 57. On December 10, 2019, Inchcape filed its Motion for (1) Payment of *Custodia Legis* Expenses and (2) Order Determining Further Allocation of Same, and, on December 18, 2019, JPMS filed its Unopposed Motion for Partial Disbursement of Sale Proceeds. Docs. 61, 73.

Finally, on January 6, 2020, the Court entered its Memorandum Opinion and Order in which it directed the Clerk of Court to disburse to Global Maritime as *custodia legis* expenses $67,925.00 from the sale proceeds of the Vessel for Global Maritime's rendered custodial services. Doc. 75.

### III. FACTUAL BACKGROUND

On August 2, 2019, Global Maritime was appointed as substitute Custodian by the Court. Doc. 6. After the Vessel was sold at public auction and the Court confirmed the sale, Global Maritime surrendered possession of the Vessel to Modern American Recycling Services, Inc. Docs. 56, 69. Inchcape paid Global Maritime's invoices for August and September 2019, $26,210.00 and $27,540.00, respectively, for a total of $53,750.00, but did not pay for Global Maritime's custodial services that were provided until possession of the Vessel was surrendered. Docs. 61-1, 66. For Inchcape's custodial services, it charged a rate of $35.00 per hour or $840.00 per day. Docs. 70-71. At the request of Clark Investments as owner representative or authozied

agent of the Vessel, Alabama Shipyard provided repairs and refitting to the Vessel to prepare it for its intended voyage through the Northwest Passage. Doc. 34 ¶ 5. Alabama Shipyard's services for the Vessel also included a wet berth and fuel storage during the months that the Vessel was under arrest, services that totaled $18,000.00 and $9,000.00, respectively. Doc. 34-2 at 2.

## IV. STANDARD OF REVIEW

A maritime lien is "[a] special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises[.]" *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1247 (11th Cir. 1999) (alterations in original) (quoting *Black's Law Dictionary* 969 (6th ed. 1990)). The Maritime Commercial Instruments and Liens Vessel Identification Act ("Federal Maritime Liens Act" or "FMLA") provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." 46 U.S.C. § 31342. Yet, the long established rule in admiralty law is that "no lien can attach to a vessel while she is in juidical custody." *Donald D. Forsht Assocs., Inc. v. TransamericaICS, Inc.*, 821 F.2d 1556, 1561 (11th Cir. 1987); *accord Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 178-79 (3d Cir. 1993) ("Since the seizure revokes all authority to incur liabilities on behalf of the ship, *one who renders services without first requiring the Court's permission, does so at his risk*." (emphasis added)). Instead, claims for necessaries provided to a ship after its arrest "are paid as 'expenses of justice' in priority to all lien claims when the dictates of 'equity and good conscious' so require." *Donald D. Forsht Assocs.*, 821 F.2d at 1561; *accord New York Dock Co. v. The Poznan*, 274 U.S. 117, 120-21, 47 S. Ct. 482, 71 L. Ed. 955 (1927); *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 922 (3d Cir. 1987) ("A person furnishing goods or services to a vessel after its arrest . . . does not acquire a maritime lien against the vessel for the value of those goods or services."); *General Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 815-16 (5th Cir. 1982); *Bassis v. Universal Line, S.A.*, 484 F.2d 1065, 1068 (2d Cir. 1973) ("[T]hose furnishing custodial services to a ship in *custodia legis* are gambling on a wholly unpredictable result unless they take the precaution of having their services authorized in advance by an order of the custodial court." (internal quotation marks omitted)); *Payne v. S.S. Tropic Breeze*, 423 F.2d 236, 239 (1st Cir. 1970) ("Expenditures while a ship is in *custodia legis* do not give rise to maritime liens. . . . [But] a district court, sitting in admiralty, has the equitable power to give priority to [such] claims.").

*Dresdner Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1272-73 (11th Cir. 2006).

## V. DISCUSSION AND ANALYSIS

The Local Rules for this Court (the "Local Rules") provide:

> The first party who seeks arrest or attachment of a vessel or property aboard a vessel shall deposit with the Marshal such sums as may be required by the Marshal to cover the expenses of the Marshal including, but not limited to, dockage, keepers, maintenance, and insurance. The Marshal is not required to execute process until the deposit is made. The party shall advance additional sums from time to time, at the Marshal's request, to cover estimated expenses. A party who fails to advance such additional sums may not participate further in the proceedings except by order of the Court. The Marshal may, upon notice to all parties, petition the Court for an order to release the vessel if additional sums are not advanced within (7) days after the request.

S.D. Ala. CivLR 104(j).

In this case, Inchcape sought the arrest of the Vessel and, therefore, became responsible for the exepenses of the Marshal. Doc. 2; *see also* S.D. Ala. CivLR 104(j). After a vessel is arrested, the Local Rules allow for a substitute custodian to be appointed by the Court to provide custodial services in the place of the Marshal. S.D. Ala. CivLR 104(l)(1) ("A substitute custodian, in place of the Marshal, may be appointed by order of the Court."). In this case, Global Maritime was appointed as a substitute custodian in the place of the Marshal and acknowledged its expenses would be paid by Inchcape, much in the way Inchcape would have had to have paid the expenses of the Marshal if a substitute custodian was not appointed by the Court. Docs. 3-1 ¶ 9, 6; *see also* Doc. 3; S.D. Ala. CivLR 104(j).

Further, the Local Rules provide that an "intervenor shall owe a debt to any party who has previously advanced funds to cover the expenses of the Marshal, enforceable on motion, consisting of the intervenor's share of the Marshal's fees and expenses in the proportion that the intervenor's claim bears to the sum of all the claims." S.D. Ala. CivLR 104(k)(2). In this case, Inchcape would be able, by motion, to recoup portions of its payments to Global Maritime from the intervenors in this matter based on the proportion of the intervenors' individual claims to the sum of all the intervenors' claims. *See id*.

However, Inchcape paid Global Maritime's invoices for August and September 2019, and did not pay for Global Maritime's custodial services that were provided until possession of the Vessel was surrendered. Doc. 66. The Court previously disbursed to Global Maritime as *custodia legis* expenses $67,925.00 from the sale proceeds of the Vessel Global Maritime's invoices for its custodial services during October, November, and December 2019. Doc. 75.

Inchcape now requests the Court to subvert the process for the arrestor to recoup portions of its custodial expenses by couching those expenses as *custodia legis* expenses, which the Court declines to do. *Custodia legis* expenses are "services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court." *Drill Ship Mission Expl.*, 668 F.2d at 816. Inchcape's payments for Global Maritime's custodial services were neither a service or property advanced to preserve and maintain the Vessel. In fact, it was Global Maritime that provided a service to preserve and maintain the Vessel, and the Court duly awarded Global Maritime as *custodia legis* expenses its unpaid invoices for those services. Doc. 75. Inchcape's effort to recoup its payments for Global Maritime's substitute custodian services would be properly addressed through a motion that invokes the process laid out in the Local Rules.

Accordingly, Inchcape's Motion for (1) Payment of *Custodia Legis* Expenses and (2) Order Determining Further Allocation of Same is **DENIED**.

As to Alabama Shipyard's request the Court pay its *custodia legis* expenses for the dock facilities and fuel storage that it provided to the Vessel, "those furnishing custodial services to a ship in *custodia legis* are gambling on a wholly unpredictable result unless they take the precaution of having their services authorized in advance of any order of the custodial court." *Dresdner Bank*, 465 F.3d at 1273 (quoting *Bassis*, 484 F.2d at 1068); *see also Drill Ship Mission Expl.*, 668 F.2d at 816 ("[S]ervices or property advanced to preserve and maintain the vessel under seizure,

furnished upon authority of the court . . . should be allowed as a *custodia legis* expense."). Here, Alabama Shipyard did not seek the Court's permission to incur the costs for its services that it provided for the Vessel. *See* Docket Sheet. Further, Alabama Shipyard's claimed *custodia legis* expenses were services that began before the Vessel was arrested, and continued to be provided after the Vessel was arrested, and were originally approved by Clarke Investments as owner representative or authorized agents of the Vessel. Doc. 34, at 2; Doc. 34-2.

Accordingly, Alabama Shipyard's Motion for Payment of In Custodia Legis Expenses is **DENIED**.

## VI. CONCLUSION

Based on the foregoing analysis Alabama Shipyard's Motion for Payment of *In Custodia Legis* Expenses is **DENIED** (Doc. 57), and Inchcape's Motion for (1) Payment of *Custodia Legis* Expenses and (2) Order Determining Further Allocation of Same is **DENIED** (Doc. 61).

Further, Global Maritime's Opposition to Motion by Inchape Shipping Services, Inc. for Reimbursement of *In Custodia Legis* Expenses and for the Court to Create a Novation of Its Contract With Global Maritime Security as the Substitute Custodian (Doc. 67) is **CONSTRUED** as a response to Inchcape's Motion for (1) Payment of *Custodia Legis* Expenses and (2) Order Determining Further Allocation of Same (Doc. 61).

**DONE** and **ORDERED** this 10th day of March 2020.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE